We'll move now to case number 3, Brenda Scheidler v. State of Indiana. Case number 17-2543. We'll begin for the appellant, Mr. Darst. Thank you, your honor. May it please the court. In this case, a failure to provide accommodations for a disability of bipolar disorder, PTSD. The district court was in error in ruling that failure to provide accommodations was the same as the failure to treat the employee equally in a discrimination claim. The claims are not the same claims as shown by the plain language of the pattern jury instructions, which contain different elements for those claims. The failure to provide accommodations is the failure to provide accommodations even when the employees are treated equally, but the accommodations are not provided. The disability discrimination is the additional claim of failure to treat the employees equally. So in this case, the court did not submit the failure to provide accommodations to the jury, granted summary judgment on that, on the reasoning that the claims were the same. They are not the same. The State of Indiana did not argue that the claims were the same, and the district court erred in ruling that they were the same. Second issue, when Scheidler used the catchy rhyme, it's who you know and who you blow, to complain about personal and political favoritism, she did not mean to complain about a physical sexual act. And the district court, in denying or in ruling on the summary judgment, held in her favor in that they said that that phrase, that catchy rhyme, the court said did not necessarily involve a sexual act. And when you use that kind of language, she was talking about the personal and political favoritism. As a matter of fact, the state's witness, Hackney, confirmed that by saying that Ms. Scheidler had complained about the personal and political relationship that the commissioner had with the person that she complained was being given favoritism. Was that why she got fired? Because the commissioner determined that she was talking about him? Yes. And what happened there was that no one complained about this statement by her in March of 2013, until she complained about her disability being aggravated by Gunter acting like she was going to strangle her and saying, I'd just like to strangle you. And at that point, the state and the commissioner reached back from May, when the strangulation threat happened to my client, reached back three months to March and said, oh, well, by the way, you also made this statement where you complained about it's who you know and who you blow. The words were interchanged by different witnesses, but basically that. And the important thing is that no one complained about that at the time. As a matter of fact, the only mention of it in March of 2013 was the mention by Gunter and Hackney to the supervisor, saying that Scheidler may complain about the favoritism. She did not complain about the favoritism. Gunter and Hackney said, don't say those words. She didn't say those words again. And no one made any complaint. At what point did they say, don't say those words? Was that on the spot or was that three months later? No, just on the spot. Yeah. OK. So there was some discussion right there. Correct. And they got off the elevator or wherever it was. Correct. Because they were carpooling together. Exactly. This is a conversation between, private conversation between people in a carpool. They were off duty. She just made this general statement, the statement about favoritism. They said, don't say that. She didn't say that again. And there was no complaint. It was not a problem. But they brought it up three months later. Yes. And she complained that Gunter said, I'd just like to strangle you. It reached for my client's throat, Scheidler. And Scheidler said, well, this is aggravating my disability, my bipolar disorder and PTSD. Then the state reached back three months earlier and said, well, three months earlier she made this general statement. And then in order to get her fired, the state said, and furthermore, that is a complaint of sexual harassment. Not only is it a complaint of sexual harassment, the state alleged that they thought it was a complaint of quid pro quo sexual harassment, which is unlawful for the state to terminate her for. She had not made that complaint as a physical sexual act. She was complaining generally. And the district court ruled that way in the order on motion for summary judgment. But the state doubled down and tried to make her look bad by saying, oh, well, she was complaining about a physical sexual act, fellatio is what they now say. And she was not saying that. She was not meaning that. They didn't even ask her. They terminated her. What she meant by it. They didn't even investigate it. Didn't give her any progressive discipline. Didn't give her any warning. And then they said, we believe that she was complaining about a physical sexual act of sexual harassment. And it's unlawful for the employer to terminate someone for complaining about sex harassment. Mr. Dirk. Yes. Was your client harmed by not having the commissioner in his official capacity as a defendant in the case? Yes. When the state has immunities such as they claimed here from injunctive relief, for instance, then the commissioner can be ordered by the court to provide injunctive relief such as reinstatement. So the distinction that you would have made if the commissioner in his official capacity was a defendant is that reinstatement could have been a possibility? Yes. Okay. You may continue. The district court is also in error to exclude the state personnel disciplines of the comparator that the state offered by the name of Donna Thomas. The state said we're offering Donna Thomas as a comparator. She was disciplined for only saying one word, the N word. And we looked at the disciplines and that wasn't true. She was disciplined for several improper things that she did. And her termination even referred to her history of discipline. So we offered those disciplines as evidence that Ms. Scheidler, who had no discipline before this, was treated worse than Ms. Thomas. The district court excluded that evidence even though that evidence had initially been offered by the state as a comparator to Ms. Scheidler. And the district court erred in that respect. The state had stipulated in the pretrial conference to the authenticity of those personnel disciplines. They were state personnel records, the records of the state of Indiana. And so there was no custodian that was required. But the district court in the trial offered to the state several objections. The state was only objecting on grounds of relevancy. We said, well, relevancy is shown because the state offered this person as a comparator. So she's obviously relevant. And then the court said, well, maybe it's hearsay. And we pointed out that the state had already stipulated to the authenticity of its own personnel records. And then the court said, well, maybe we need a custodian. And we pointed out that the pretrial conference discussion showed that the reason for the authenticity stipulation was to avoid having a custodian come in. And then the state did not put any custodian on the witness stand. And the state had prohibited us from contacting any state employee for the trial. Well, they say that the trial, they didn't reassert that. Whatever the determination made during summary judgment, they did not refresh it or do whatever you do when you get to trial. Is that correct? I think the state's argument is that we did not call a custodian of records to authenticate the state personnel documents that were disciplines. And the pretrial conference dialogue shows that the whole purpose of the stipulation of authenticity was to avoid having a custodian come in and verify or authenticate the state's own personnel documents of the comparator that the state had offered. So there was no requirement to have a custodian there. Further problem was that right before trial, the state said you cannot talk to any state employee because we represent all state employees, which is improper. They can only represent the state employees who speak for the state. So during the trial, the state did not present anyone who was a current employee who was a custodian of records, so we couldn't ask them and we couldn't talk to anyone in the state because the state told us that we couldn't talk to any state employee. But the easy answer is that the stipulation of authenticity was for the purpose of not having to call in a custodian of the records. Does that answer your question? It does. I assume they might say something different, but I just want you to understand that. Yes, sir. You're into your request of rebuttal time. Did you want to reserve the remaining? Yes, Your Honor. Thank you very much. Thank you. Mr. Kraft. Good morning, Your Honors. Good morning. May it please the Court. Federal law doesn't prohibit firing an employee for misconduct, even if that employee is disabled. The department fired Scheidler here for two instances of misconduct. First was her argument with Annette Gunter in which both employees were disciplined for inappropriate conduct. And second was her offensive statement that came to light during the investigation of that incident, in which referring to a potential promotion that another employee was interviewing for, Scheidler said, well, it's not what you know, it's who you blow. And Ankeny and Gunter interpreted that as being sexual in nature. They told her that's inappropriate. They disagreed with that position. But they didn't report it at the time. But three months later, when the incident occurs with Gunter, there's the State Personnel Department investigation, and as these things often do, they ask questions about employee conduct, not only this incident, but in the past on both sides, and that's how it came to light. That's how the department learned about it. Now, as we discussed in our brief, we believe that Scheidler's waived most of her arguments on appeal through inadequate development. But I would like to briefly address the four main issues she asserts. First, the district court correctly dismissed as duplicative her failure to accommodate claims. Now, it's obviously true in principle that failure to accommodate differs from discriminatory termination. But the reason they were duplicative here was that in the district court, the only accommodation she said that she didn't get was not to be fired for her misconduct and not to be treated the same as Gunter. Well, being treated differently from Gunter's run-of-the-mill discrimination claim. As far as not being terminated for misconduct, that is not a viable accommodation, as Brumfeld holds. You cannot, Brumfeld and Palmer, a disabled employee is not entitled to an accommodation for his or her misconduct, even if the misconduct's caused by the disability. And in this case, there's not even a suggestion of that. I also think that in general, failure to accommodate is a poor fit when someone's terminated not for poor performance, but for misconduct. The whole purpose of the duty to accommodate is to give people with disabilities the opportunity to perform the essential functions of the job. And as the record shows, Shidler had no problems ever performing the functions of her job. Now, with regard to the retaliation claim, the district court correctly found that there was no statutorily protected activity. She insists that the it's-not-what-you-know-it's-who-you-blow comment was a complaint about sex discrimination. But at worst, that comment is a highly offensive sexual insult impugning the integrity not only of the employee, but the commissioner himself. At best, it's just a general complaint of favoritism. Neither one of those is a complaint about sex discrimination under Title VII. There's also no factual support for applying Heffernan. The argument that the state interpreted this as a complaint about quid pro quo sexual discrimination comes from a snippet in a reply brief and taken out of context. There's just no support for that. With regard to the ADA and Rehab Act retaliation claims, the only specific statement that Shidler designated below was that she told HR that she reacted to the argument with Gunter the way she did because of her bipolar and her PTSD. But she did not say that Gunter targeted her or argued with her due to her disability. And that's what's required to be a complaint about discrimination. Was it that confrontation that both of them were disciplined for? Yes, both were disciplined for that judgment. And Gunter received the reprimand because it was her only act of misconduct in 30 years, whereas Shidler received the termination because of the argument and the statement. Why didn't the state invoke immunity in the various ADA and Rehabilitation Act claims? They did invoke immunity for the damages claims on the ADA. I'm not entirely sure why they didn't raise all the other immunities. But even though the district court, as we point out, should have given notice that it was considering dismissing the claims against the commissioner on those grounds, any error in failing to give that notice is harmless. Because the fact of the matter is, whether it was the state proper or the commissioner standing in as the state, the district court, whether through summary judgment or trial, considered all of Shidler's claims on the merits and found that they failed. And the only individual capacity claim that could be stated would be a 1983 claim parallel to the Title VII claim. But as this court has held, Alamo being one of the decisions, the elements to succeed on that 1983 claim are the same as the Title VII claim. So if she failed the Title VII claim, as the district court found, then the 1983 claim was also doomed. Can you name another example of a case where this court dismissed a complaint in these circumstances under harmless error? I think the Hotel 71 S lender that we cite in the brief talks about how harmless error can be invoked when the district court doesn't follow. I think it's in Federal Rule of Civil Procedure 56 that gives the district court the ability to grant summary judgment on grounds not raised by the parties, so long as it provides notice that it's going to do so and an opportunity to respond. And so the Hotel 71 case, and I apologize, the other two cases I cite in the brief, which talk about harmless error being applicable there, the bottom line is that it has been done, and Hotel 71 is an example. With regard to the alleged trial error, the district court did not abuse its discretion in excluding the Thomas exhibits. First off, the court gave Shidler ample notice at the final pretrial conference that although the state had stipulated to authenticity, authenticity is not the same as admissibility. And so Shidler would need to establish the foundation under the business records exception. Authenticity is one of those elements of that foundation, but there are four others. And when it came time to trial, she didn't even try to lay a foundation. And in fact, her case in chief consisted only of her testimony. She did not mention Thomas at all. She testified about all sorts of other things, never mentioned Donna Thomas. She gets done testifying, and then she moves to admit these exhibits. Well, she hasn't laid the foundation. She hasn't established relevance because she hasn't even mentioned who Thomas is. She hasn't shown that Thomas also was not disabled. And as the district court noted, because she hadn't mentioned anything, she hadn't even shown in the trial that Thomas had been disciplined by the same decision maker. So the jury would have been completely unsure what to do with these. They've not heard anything about Thomas. And that's why the district court correctly excluded it, both for a lack of foundation for the business records exception and for a lack of relevancy. And with regard to the idea that the state either agreed that we didn't have to call in a custodian of records, again, we agreed to authenticity. To lay the foundation under 8036, you can use a custodian of records, but you can also use any qualified witness. A qualified witness, an example of which would be a HR director who maintains these files. And when Katie Daly, the former HR director, who was HR director at the time all of this occurred, was on the stand, Shidler didn't ask her anything about Donna Thomas and didn't bother to try to lay the foundation there and get the evidence in. For these reasons, if there are no other questions, we'd ask the court to affirm the district court's judgment. Thank you, Mr. Cronin. Thank you. Mr. Darst. Thank you, Your Honor. I'm trying to take the points in reverse. Katie Daly, who was called by the state, was not a current employee at the time of the trial and so would not have been a custodian of the record or a qualified witness. She was not even a custodian when she was employed by the state. She was a low-level, first-level HR manager for a department, which was the only HR person there, so she was not any kind of custodian or qualified person for the records. The state has argued that Thomas was disabled. That is correct. There was no evidence that Thomas was disabled. As a matter of fact, the state offered her evidence as a person, a comparator, who was not disabled and tried to claim that here's a not-disabled person who was terminated for only one incident. We come to find out it wasn't one incident. She had a record, she had a history that the termination referred to, and so we were offering that evidence into the court to show that she was treated much better than Ms. Scheidler, who was disabled. As a matter of fact, not only had the state offered Ms. Thomas as someone who was not disabled, but if Ms. Thomas had any claim of disability, the state would have offered that, and the state would have had that record. Ms. Scheidler would not have had that record. What about all the waivers? I think I have a whole list of them. What went on? Things that weren't brought up? Maybe they didn't need to be brought up. I think when you check the motion for summary judgment, you'll find that the defendants did not raise those in their motion for summary judgment. For instance, the defendant did not raise the claim that the claim of failure to accommodate was the same as discrimination, did not raise the claims about the commissioner. Those motions for summary judgment did not raise those claims, so we then did not respond to claims that were not raised, of course. Then on appeal, I think what happened probably, you may be looking at a list that may have been drawn from a brief of appellees. I think the appellees probably made just one or two sentences, as I remember, saying, well, this was not raised, this was not raised, this was not raised. They weren't raised in the motion for summary judgment, so the appellees tried to turn that around and say that the non-moving party should have raised them, but that's not true. None of those have been argued in oral argument anyway. The case which illustrates how going back shows pretest, going back from May to March, pull something back if it's not a problem, is the Peerik case, Peerik versus Indiana University. The state argues that Ms. Scheidler had two incidents of misconduct. She had no incidents of misconduct. Her statement privately in the elevator was not misconduct. She was off duty. She never made it again. It was no problem. Her complaint about Gunther trying to strangle her was not any misconduct, and yet the state, when she complained about Ms. Gunther trying to strangle her or threatening to strangle her, they said, oh, we don't like that. We're going to claim that Ms. Scheidler engaged in misconduct when she did not. She certainly did not engage in two incidents, and if there was any misconduct, it was certainly not as serious as Ms. Gunther threatening to strangle her and Ms. Thomas' four incidents of misconduct. Thank you, Mr. Darcy. The case will be taken into revision. Thank you.